# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
**NO. 03-13-00378-CV**
---

**In the Matter of R. T.**

---
**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
NO. 10-309-J395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

R.T. appeals the trial court's order transferring him from the Texas Juvenile Justice Department (TJJD) to the Texas Department of Criminal Justice–Institutional Division (TDCJ) to complete the remainder of his 20-year determinate sentence for aggravated sexual assault of a child. *See* Tex. Fam. Code § 54.11 (governing juvenile court's decision to parole or transfer juvenile offender); Tex. Human Res. Code § 244.014 (authorizing TJJD to refer juvenile offender between age 16 and 19 for transfer to TDCJ); Tex. Penal Code § 22.0121(a)(1), (a)(2)(B) (aggravated sexual assault). On appeal, R.T. asserts that the trial court erroneously transferred him to TDCJ because the record establishes he should have been placed on parole with special sex-offender conditions. We affirm the trial court's judgment.[1]

At the time of the charged offense, R.T. was approximately 14 years old and the victim (R.T.'s half-brother) was approximately four years old. R.T. accepted a plea bargain with a

---

[1] We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the applicable law is settled.

20-year determinate sentence and was committed to TJJD's custody. A little more than two years later, the trial court held a hearing to determine whether R.T. should be released on parole or transferred to the TDCJ for the remainder of his sentence. *See* Tex. Fam. Code § 54.11 (governing release or transfer hearing).

At the hearing, the trial court heard evidence about the nature of the underlying offense, R.T.'s prior sexual assault offenses, his history of sexual abuse, and his failure to successfully complete a sexual-behavior treatment program while committed to TJJD. There was also positive evidence of R.T.'s academic and behavioral progress since his commitment: R.T. obtained his general equivalency diploma, completed 18 hours of college courses with a 3.33 grade-point average, reduced the number and severity of incident reports he received over time, reduced his "risk factors" for recidivism to zero while institutionalized, and increased his "protective factors" related to positive community reintegration.[2] Nevertheless, Dr. Enrique Covarrubias, a psychologist at the Giddings State School who performed a psychological evaluation of R.T. and prepared a report that was considered by the trial court, recommended that R.T. be transferred to the TDCJ rather than released on parole. Dr. Covarrubias testified that R.T. needed structure and continued therapy to be successful and remained a risk to the community and to young people. Leonard Cucolo, the TJJD's court liaison, also recommended that R.T. be transferred to TDCJ. A

---

[2] Risk factors were reported to include associating with negative peers, coping with stress, history of poor parental management, history of poor social support, history of substance abuse, negative attitude, anger management, and holding back information. Protective factors were defined as "risk moderators," and included involvement in pro-social activities, some support from and strong attachment to family and friends, positive attitude toward intervention and authority, intellectual and cognitive ability, and academic achievements.

community member who ministered to R.T. during his TJJD confinement testified that he believed R.T. was ready to be released into the community on parole and did not pose a threat to the community. At the conclusion of the hearing, the court ordered R.T. transferred to the TDCJ.

We review a trial court's transfer decision for an abuse of discretion. *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.). In making a determination whether to release a juvenile from the TJJD or transfer him to the TDCJ,

> the court may consider the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the Texas Juvenile Justice Department, county juvenile board, local juvenile probation department, and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

Tex. Fam. Code § 54.11(k). The trial court is not required to consider each of the statutory factors in making a decision. *In re J.L.C.*, 160 S.W.3d at 313-14. Moreover, the court is expressly permitted to consider unlisted but relevant factors and may assign different weights to the factors considered. *Id.* at 314. The court may also consider reports from probation officers, professional court employees, professional consultants and employees of the TJJD, as well as witness testimony. Tex. Fam. Code § 54.11(d). In our review, we look at the entire record to determine if the court acted unreasonably or without reference to any guiding rules or principles. *In re J.L.C.*, 160 S.W.3d at 313. If some evidence supports the court's decision, there is no abuse of discretion. *Id.*

3

The record establishes that the trial court looked at the evidence in light of relevant section 54.11(k) factors. The court acknowledged R.T.'s "positive progress," but determined that significant issues outweighed that progress. The court specifically focused on R.T.'s experiences and character before and after commitment to TJJD, the nature of the penal offense he was found to have committed, the manner in which the offense was committed, the recommendations from the TJJD's witnesses, and the court's responsibility to the community and potential future victims.

It is undisputed that before committing the underlying offense, R.T. sexually abused two other young children but avoided criminal responsibility due to his age at the time. Following those offenses, R.T. participated in and was "satisfactorily" discharged from sex-offender treatment. Despite successfully completing treatment, R.T. committed the underlying crime, and there is evidence that he had escalated to the use of force in doing so. The court expressed concern that R.T.'s prior sex-offender treatment, although deemed sufficient at the time, had been ineffective to reduce the risk to future victims. More disturbing was the undisputed fact that R.T. had *not* successfully completed sexual-behavior treatment while in TJJD's custody. Dr. Covarrubias opined that it was of significant concern that R.T. was unsuccessfully discharged from the TJJD's sexual-behavior treatment program after nearly two years of participation.

After conducting a psychological examination, Dr. Covarrubias reported that R.T. had stalled in his therapeutic progression and may have even regressed. He expressed concern that R.T. failed to acknowledge or minimized his offending conduct, was not entirely forthcoming regarding the nature of his offenses and the victims unless confronted with the facts, and did not consistently admit to the degree of force or use of threats that the victims had reported. He observed, however,

4

that R.T. took responsibility for the conduct he had acknowledged and expressed empathy for the victim of the subject offense. Dr. Covarrubias also noted that staff turnover and inconsistency in treatment may have contributed to delays in R.T.'s therapeutic progress.

Although Dr. Covarrubias found a number of good indicators that R.T. could be successful in the community, he testified that R.T. continued to possess "thinking errors" that posed a risk to the community if not adequately addressed with continued therapy. The doctor further reported that R.T. remained a risk to those "in his inner circle" and "younger populations." While Dr. Covarrubias acknowledged that R.T. had made progress in a number of respects, he noted that R.T. had benefitted from the TJJD's structured environment and needed continued structure to be successful in his progress. He testified that "R.T. still needs sexual behavior treatment, and he still needs to be in a more structured setting versus without any kind of structure."

Cucolo testified that TJJD's official recommendation was that R.T. was not ready to be paroled. Cucolo observed that R.T. progressed through the TJJD's parole-readiness program more slowly than expected. He explained that juvenile offenders typically complete the program in 12 to 18 months, but after 25 months of incarceration and facing a 20-year determinate sentence, R.T. still had not achieved the parole-readiness stage of the program. Cucolo acknowledged that therapist turnover may have played a role in delaying R.T.'s progress, but nevertheless firmly expressed that R.T. was not ready to be released. Cucolo also provided evidence concerning R.T.'s rule violations and behavior issues during his 25 months of incarceration. Although the record reflects a significant number of behavior incidents and major rule violations, including assaults on other residents, Cucolo testified that the number and severity had decreased significantly in the

5

preceding year and a half, with only one major incident and one minor incident in the months before the hearing. While Cucolo also recognized that R.T. had improved in many other respects, he attributed R.T.'s success to TJJD's structured environment and testified that R.T. required a "highly-structured setting in order to protect the community from future incidents or future offenses of a sexual nature."

R.T. contends that the trial court abused its discretion in relying on Cucolo's recommendation because his written recommendation cited concerns that R.T. contends are inaccurate or are not his fault. Notwithstanding the alleged "inaccuracies" or "inconsistencies" (which could be more properly characterized as factual disputes or as having resulted from R.T.'s own inconsistencies), TJJD's witnesses provided sufficient information to support their recommendations, and the trial court did not abuse its discretion in considering those recommendations. R.T. further complains that the trial court erred in citing his "overall record at TJJD" as a basis for the transfer order because he had improved his behavior. However, in citing that factor, the trial court was free to consider evidence that after 25 months of incarceration, R.T. had not successfully completed sexual-behavior therapy; was still acting out, albeit less so; and regardless of the cause, was not parole ready.

R.T. further asserts that there is insufficient evidence that the welfare of the community requires that he be transferred rather than paroled with special sex-offender conditions. He also cites testimony from TJJD's witnesses that he needs to continue sex-offender treatment and could be required to continue that treatment while on parole. In TDCJ's custody, however, he will not be able to participate in a sex-offender treatment program until he has served a significant

6

amount of his prison term, and even then participation is strictly voluntary. R.T. further contends there is no evidence that he exhibited behaviors indicating future criminal behavior while incarcerated, intentionally failed to progress in the sexual-behavior treatment program, engaged in excessive rule violations after he had sufficient time to adjust to his new surroundings, or victimized any person or engaged in inappropriate sexual behavior while at TJJD. R.T.'s complaints are matters of degree. He essentially acknowledges adverse evidence that may properly have been considered by the trial court, but contends that there is insufficient evidence that the circumstances were *bad enough* for the trial court to reasonably consider them. To the extent the suggested matters of degree are relevant considerations for the trial court, the court is not required to give dispositive weight to those circumstances, either individually or cumulatively. The trial court was entitled to give more weight to the seriousness of the underlying offense as well as evidence that R.T. re-offended more aggressively after being satisfactorily discharged from an earlier sex-offender treatment program, did not successfully complete the sexual-behavior treatment program while incarcerated, requires a considerable degree of structure, is not presently ready to be released, and poses a risk to the community if released at this time.

Because there is some evidence to support the trial court's decision to transfer R.T. to the TDCJ as opposed to releasing him on parole, we hold there was no abuse of discretion. R.T.'s sole appellate point is overruled.

**CONCLUSION**

In light of the foregoing, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   April 24, 2014